**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION**

| | |
|---|---|
| PC, LLC, | |
| Plaintiff, | |
| v. | No. 22-cv-5655 |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", | Judge Mary M. Rowland<br>Magistrate Judge Jeffrey Cole |
| Defendants. | |

**BRIEF IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

**<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II.   STATEMENT OF FACTS ...................................................................................................... 2

    *A.   Plaintiff's Intellectual Property* ................................................................................... 2

        1.    Plaintiff's Trademarks ........................................................................................... 2

        2.    Plaintiff's Copyrighted Works ............................................................................... 3

        3.    Plaintiff's Design Patents ....................................................................................... 4

    *B.   Defendants' Unlawful Activities* .................................................................................. 4

III.  ARGUMENT ........................................................................................................................... 5

    *A.   Standard for a Preliminary Injunction* ....................................................................... 6

    *B.   Plaintiff Is Likely to Succeed on the Merits* ................................................................ 7

        1.    Trademark Infringement and Counterfeiting ....................................................... 7

        2.    Copyright Infringement .......................................................................................... 9

        3.    Design Patent Infringement ................................................................................. 10

    *C.   There is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief* ................................................................................... 11

    *D.   The Balance of Harms Tips in Plaintiff's Favor, and the Public Interest is Served by Entry of the Injunction* ........................................................................................................... 13

IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 14

    *A.   A Preliminary Injunction Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Intellectual Property is Appropriate* ....................................................... 14

    *B.   Preventing the Fraudulent Transfer of Assets is Appropriate* ............................... 15

    *C.   Plaintiff is Entitled to Continued Expedited Discovery* ........................................... 17

**V.   THE EXISTING BOND SHOULD SECURE THE INJUNCTIVE RELIEF ............... 18**

**VI.  CONCLUSION .................................................................................................... 18**

## <u>TABLE OF AUTHORITIES</u>

<u>U.S. SUPREME COURT CASES</u>

*Feist Pub'lns. Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ................................... 9

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ..................... 16

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......................................... 17

<u>U.S. COURT OF APPEALS CASES</u>

*Abbott Labs. v. Mead Johnson & C*o., 971 F.2d 6 (7th Cir. 1992) ................................. 7

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) .......................... 16

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 786 F.3d 983 (Fed. Cir. 2015) ............................. 11

*AutoZone, Inc. v. Strick*, 543 F.3d 923 (7th Cir. 2008) .................................................. 8

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041 (7th Cir. 2000) ...................................... 7

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660 (7th Cir. 2001) .................................. 9

*Eli Lilly & Co v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) ........................................ 12

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) .......................... 10

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325 (7th Cir. 1977)..... 12

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir. 1979) ................................. 12

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988).............. 12

*JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir. 2007)........................................ 9

*Microsoft Corp. v. Rechanik*, 249 F. App'x 476 (7th Cir. 2007)........................................ 8

*Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002)............................... 13

*Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424 (7th Cir. 2001) ....................................... 12

*Ty, Inc. v. The Jones Grp., Inc.*, 237 F.3d 891 (7th Cir. 2001) ........................................... 6, 7, 13

<u>U.S. DISTRICT COURT CASES</u>

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) ................................................ 14

*Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ................................................................................................................................ 5

*Chrome Cherry Ltd. v. P'ships and Unincorporated Ass'ns Identified On Schedule "A",* No. 21-cv-5491, 2021 WL 6752296 (N.D. Ill. Oct. 20, 2021) ............................................................. 17

*Deckers Outdoor Corporation v. P'ships, et al.*, No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished opinion) ................................................................................................... 18

*Frerck v. John Wiley & Sons, Inc.*, 850 F.2d 889 (N.D. Ill. 2012) ......................................... 12

*Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942 (N.D. Ill. 2002) ................................ 15

*Krause Int'l Inc v. Reed Elsevier*, 866 F. Supp. 585 (D.D.C. 1994) ......................................... 13

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, Nos. 03 C 4844, 03 C 5311, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005) ............................................................................... 16

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473 (D.D.C. 1996) .............................................................................................................................. 14

*Mercis B.V. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-0872, 2021 WL 4699007 (N.D. Ill. Mar. 19, 2021) ............................................................... 15

*Vance v. Rumsfield*, No. 06 C 6964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ..................... 17

<u>STATUTES</u>

15 U.S.C. § 1051 ................................................................................................................... 5

15 U.S.C. § 1057 ............................................................................................................... 3, 7

15 U.S.C. § 1114 ................................................................................................................... 7

15 U.S.C. § 1116 ................................................................................................................. 14

15 U.S.C. § 1117 .................................................................................................. 16

15 U.S.C. § 1126 .................................................................................................... 7

17 U.S.C. § 106 ................................................................................................. 3, 10

17 U.S.C. § 501 ................................................................................................... 5, 9

28 U.S.C. § 1331 .................................................................................................... 5

28 U.S.C. § 1338 .................................................................................................... 5

28 U.S.C. § 1367 .................................................................................................... 5

28 U.S.C. § 1391 .................................................................................................... 5

35 U.S.C. § 271 ................................................................................................. 5, 10

35 U.S.C. § 282 ..................................................................................................... 4

35 U.S.C. § 289 ................................................................................................... 10

Fed. R. Civ. P. 26 ................................................................................................ 17

Fed. R. Civ. P. 65 ............................................................................................. 6, 13

## BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

### I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff Puffin Coolers, LLC ("Plaintiff"), requests preliminary injunctive relief on its Complaint for trademark infringement and counterfeiting, false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act, copyright infringement, design patent infringement, and civil conspiracy against the defendants identified on Schedule "A" of the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and/or selling unauthorized/unlicensed counterfeit versions of Plaintiff's PUFFIN and FUN. TOGETHER. branded products. Additionally, Defendants are using infringing versions of Plaintiff's federally registered PUFFIN and FUN. TOGETHER. trademarks through various fully interactive, commercial Internet stores operating under at least the Seller Aliases identified in Schedule "A" of the Complaint (collectively, "Defendant Internet Stores").

Defendants have targeted sales to Illinois residents by setting up and operating one or more e-commerce Internet stores that target United States consumers using one or more Seller Aliases and offer shipping to the United States, including Illinois. E-commerce Internet stores operating under these Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more of the Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff has been forced to file this action to combat Defendants' counterfeiting of the federally registered PUFFIN and FUN. TOGETHER. trademarks, as well as to protect unknowing consumers from purchasing counterfeit products that infringe Plaintiff's design patents, which are available over the Internet. In support of this infringement and passing off, Defendants' marketing

1

program uses images with registered copyrights owned by Plaintiff. Defendants' ongoing unlawful activities should be enjoined, and Plaintiff respectfully requests that this Court issue a preliminary injunction.

## II.    STATEMENT OF FACTS

### A.  Plaintiff's Intellectual Property

Plaintiff is an Oregon limited liability company and is the seller of miniature apparel items (such as jackets, life vests, flannels, sleeping bags, and parkas) meant to be worn by various beverage cans and bottles to provide aesthetically pleasing insulation for consumers' beverages (collectively, "PUFFIN products"). Plaintiff sells these products to consumers through its brand PUFFIN and FUN. TOGETHER. via the Plaintiff's e-commerce marketplaces and through authorized dealers and affiliates. *See* Decl. of Tyrone Hazen ¶ 11, ECF No. 6-2 ("Hazen Decl."). Since its inception in 2018, Plaintiff has obtained trademark, copyright, and design patent protection to develop and strengthen its brand. Plaintiff is engaged in the business of manufacturing, distributing, and retailing its products within the Northern District of Illinois under the PUFFIN and FUN. TOGETHER. trademarks. *Id.,* ¶¶ 11.

### 1.  Plaintiff's Trademarks

Plaintiff established its unique PUFFIN and FUN. TOGETHER. branded storefront to offer affordable, durable, high-quality "drinkwear" products which insulate consumers' beverages after noting a need for such products on the market. Since its first use in commerce in 2018, Plaintiff has introduced a variety of PUFFIN and FUN. TOGETHER. products through its e-commerce marketplaces. Plaintiff's products have been advertised with its federally registered trademarks for several years. Plaintiff continues to heavily advertise its products on all its e-commerce marketplaces, social media, product demonstration videos, and other advertisement outlets. Its

websites and social media feature original content, reviews, and testimonials for PUFFIN and FUN. TOGETHER. branded products.

Plaintiff's strong presence in the market fostered by its substantial and continuous marketing and promotion efforts have allowed it to be recognized nationwide and worldwide. *Id.,* ¶ 11. PUFFIN and FUN. TOGETHER. are distinctive and identify the merchandise as goods originating from the Plaintiff. *Id.,* ¶¶ 9, 26. As a result, consumers recognize that products bearing the PUFFIN and FUN. TOGETHER. trademarks originate exclusively with the Plaintiff. *Id.* The national recognition, reputation, and goodwill associated with Plaintiff's brand has made the PUFFIN and FUN. TOGETHER. trademarks an invaluable asset of the Plaintiff. Hazen Decl., ¶ 9, 26. The registrations of Plaintiff's trademarks constitute prima facie evidence of its validity and of Plaintiff's exclusive right to use the trademarks. 15 U.S.C. § 1057(b). The PUFFIN and FUN. TOGETHER. trademarks have been continuously used and never abandoned since their first use in commerce. Defendants' sales of counterfeit products and usage of Plaintiff's trademarks without authorization and in violation of Plaintiff's intellectual property rights are irreparably damaging the Plaintiff. Hazen Decl., ¶ 6.

2. Plaintiff's Copyrighted Works

Plaintiff created its copyrighted works in 2021 and Plaintiff is the owner of all rights in these works. Since their creation, Plaintiff has published, distributed, and publicly displayed copies of the copyrighted works in the U.S. by using them as marketing materials for its PUFFIN products. Plaintiff has disseminated the works via its e-commerce marketplaces. Plaintiff owns federal registrations for the copyrighted works. Hazen Decl., ¶ 6. The registrations of Plaintiff's copyrighted works constitute prima facie evidence of their validity and of Plaintiff's exclusive right to copy, reproduce, distribute, and publicly display the copyrighted works. 17 U.S.C. § 106.

3

Defendants' copies, reproductions, distribution, public display, and derivative works of Plaintiff's copyrighted works without authorization and in violation of Plaintiff's intellectual property rights are irreparably damaging the Plaintiff.

### 3. Plaintiff's Design Patents

Plaintiff was duly and legally issued two design patents by the USPTO. Hazen Decl., ¶ 4-5. The design patents claim the ornamental designs as shown and described in the patent, including "the ornamental design for an insulating sleeve for a beverage container." Plaintiff uses these patented designs in connection with its PUFFIN and FUN. TOGETHER. brands. Plaintiff has the exclusive right under the design patents to license, make, use, develop, offer for sale, sell, and import products covered by the design patents. The registration of Plaintiff's design patents creates a presumption of their validity. 35 U.S.C. § 282(a). Defendants' making, offering for sale, selling, and importation of the accused products without authorization from the Plaintiff and in violation of Plaintiff's intellectual property rights are irreparably damaging the Plaintiff.

### B. Defendants' Unlawful Activities

The success of Plaintiff's brand has resulted in significant counterfeiting. Hazen Decl., ¶ 12. In recent years, Plaintiff has identified hundreds of fully interactive online marketplace listings on platforms such as, but not limited to, Alibaba, AliExpress, Amazon, DHgate, eBay, Etsy, Joom, Shopify, Walmart, and Wish, including the Seller Aliases attached to the Defendant Internet Stores, which were offering for sale and selling counterfeit PUFFIN and FUN. TOGETHER. branded products to consumers in this Judicial District and throughout the United States. *Id*. Plaintiff's allegations in its Complaint regarding registration patterns, common design elements, similarities among the Defendant Internet Stores, counterfeit product for sale thereon, and common

tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and suggest that Defendants are interrelated. *Id.,* ¶¶ 16-21.

Plaintiff has compiled hundreds of examples of Defendants' infringing uses of Plaintiff's trademarks, offers for sale, and sale of counterfeit items. Ex. 2 to Hazen Decl., ECF Nos. 6-4 to 6-23 ("Hazen Ex. 2"). The counterfeit items are extremely close in appearance to genuine products and each counterfeit item is shipped in identical packaging.

## III.    ARGUMENT

This Court has original subject-matter jurisdiction over the claims in this action. 15 U.S.C. § 1051, et seq., 17 U.S.C. § 501, 35 U.S.C. § 271, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that rise under Illinois law because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. 28 U.S.C. § 1367(a). Venue is proper. 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive Internet stores operating under Defendants' Seller Aliases. Specifically, Defendants have set up and are operating e-commerce Internet stores under one or more Seller Aliases which are accessible to United States consumers and which target Illinois residents who may then unknowingly purchase infringing and counterfeit versions of Plaintiff's products. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction was proper over defendants offering to sell alleged infringing products to United States residents, including Illinois, and no actual sale was required); *see also* Hazen Decl., ¶¶ 13-15. The Defendants are committing tortious acts in Illinois,

are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois. *Id.*

Defendants' purposeful, intentional, and persistent unlawful conduct and unlicensed use of Plaintiff's intellectual property is causing and will continue to cause irreparable harm to Plaintiff's reputation and goodwill symbolized by its PUFFIN and FUN. TOGETHER. trademarks. The Federal Rules of Civil Procedure provides that the Court may issue a preliminary injunction where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(a). The entry of a preliminary injunction is appropriate because it would enjoin Defendants from benefiting from their wrongful use of Plaintiff's intellectual property and preserve the status quo until a complete accounting is produced by Defendants and the Court can rule on the merits of the Complaint.

In the absence of a preliminary injunction, Defendants can and will likely register new domain names or online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Hazen Decl., ¶ 20. As such, Plaintiff respectfully requests this Court to issue the requested preliminary injunction.

### A. Standard for a Preliminary Injunction

A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If this Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if denied. *Id*. Finally, this Court must

6

consider the potential effect on the public interest (i.e., non-parties) in denying or granting the injunction. *Id*. This Court must then weigh all these facts, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. (quoting *Abbott Labs. v. Mead Johnson & C*o., 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what this Court has deemed the "sliding scale approach," i.e., the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

**B. Plaintiff Is Likely to Succeed on the Merits**

1. <u>Trademark Infringement and Counterfeiting</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act it if, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements: (1) the plaintiff must show "that its mark is protected under the Lanham Act" and, (2) that the challenged mark is likely to cause confusion among consumers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000); *see also* 15 U.S.C. § 1126(a).

Plaintiff satisfies the first element of its Lanham Act claim because Plaintiff's PUFFIN and FUN. TOGETHER. trademarks are inherently distinctive and registered with the United States Patent and Trademark Office. *See* Ex. 1 to Hazen Decl., ECF No. 6-2 ("Hazen Ex. 1"). The registrations for the PUFFIN and FUN. TOGETHER. trademarks are valid, subsisting, in full force and effect, and constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the PUFFIN and FUN. TOGETHER. Trademarks. 15 U.S.C. § 1057(b). Plaintiff has not licensed or authorized Defendants to use the PUFFIN and FUN. TOGETHER. trademarks, and

7

none of the Defendants are authorized retailers of genuine PUFFIN and FUN. TOGETHER. branded products. Hazen Decl., ¶¶ 13, 15-16.

The Seventh Circuit has held that where "one produced counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, this Court can presume a likelihood of confusion from Defendants' use of the PUFFIN and FUN. TOGETHER. trademarks. The result is the same when considered in light of the Seventh Circuit's seven factors to determine whether a likelihood of confusion exists, which are the following: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as those of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendants' intent are "particularly important." *Id.*

Plaintiff submitted extensive documentation showing that Defendants are offering for sale and selling counterfeit items that look confusingly similar to genuine PUFFIN products and use infringing marks identical to the PUFFIN and FUN. TOGETHER. trademarks. Hazen Ex. 2. The similarities between Plaintiff's genuine products and Defendants' counterfeit items are readily apparent. Both the genuine products and counterfeit items are advertised as insulated apparel for beverages. *See* Hazen Decl., ¶¶ 12, 16. In addition, both the genuine products and counterfeit items use Plaintiff's innovative, unique designs which are marketed and associated with the PUFFIN and FUN. TOGETHER. marks. *Id.,* ¶¶ 3, 13. Defendants use the PUFFIN and FUN. TOGETHER. trademarks to advertise their product to unsuspecting consumers. *Id.,* ¶ 13, 15.

Both Plaintiff and Defendants advertise and sell their products to consumers via the Internet. Defendants target consumers looking for genuine PUFFIN and FUN. TOGETHER. branded products. *Id.,* ¶ 15. Those consumers are diverse, have varying degrees of sophistication, and are likely to have difficulty distinguishing genuine PUFFIN and FUN. TOGETHER. branded products from counterfeit items. Therefore, it appears that Defendants are intentionally trying to induce consumers looking for genuine PUFFIN and FUN. TOGETHER. branded products to purchase counterfeit versions instead. *Id.* In that regard, Defendants advertise counterfeit items using the PUFFIN and FUN. TOGETHER. trademarks. *Hazen Decl.*, ¶ 15. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine PUFFIN and FUN. TOGETHER. branded product. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff is likely to establish a prima facie case of trademark infringement, counterfeiting, and false designation of origin.

2. <u>Copyright Infringement</u>

Defendants are liable for copyright infringement if they have exercised a copyright owner's exclusive rights without authorization. 17 U.S.C. § 501. To prevail in a copyright infringement action, the copyright owner must show that they own a valid copyright in the work and that the defendant copied the work without authorization. *Id.; see also Feist Pub'lns. Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).

Here, Plaintiff owns valid copyrights that are registered with the USPTO. Hazen Decl., ¶ 6. The registrations for the copyrights are valid, subsisting, and in full force and effect, and they constitute prima facie evidence of their validity and of Plaintiff's exclusive right to the works. 17

U.S.C. § 106. Plaintiff has not licensed or authorized Defendants to use the copyrighted works or derivative works, yet Defendants are using them in their marketing materials. Thus, Plaintiff satisfies both elements of a copyright infringement claim.

Plaintiff has submitted extensive documentation showing that Defendants are using Plaintiff's copyrighted works and derivative works to market their products. Hazen Ex. 2. Similarities between Plaintiff's copyrighted works and the works of the Defendants are readily available—Defendants have either used the exact images copyrighted by Plaintiffs or derivative works, which include minor changes, such as, but not limited to, changes in product color, nominally different placement of items in the images, and removal of Plaintiff's trademarks or marketing language from the images. Accordingly, Plaintiff is likely to establish a prima facie case of copyright infringement.

3. Design Patent Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). A defendant is liable for design patent infringement if the party, "without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. § 289. To prevail in a design patent infringement action, the design patent owner must show that, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (internal citations omitted). A design

10

patent owner need not show proof of actual deception of a purchaser to prove design patent infringement. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 786 F.3d 983, 999-1000 (Fed. Cir. 2015).

Here, Plaintiff owns valid design patents that are registered with the USPTO. Hazen Decl., ¶ 6. The registrations are valid, subsisting, and in full force and effect. Plaintiff has not licensed or authorized Defendants to use the patented designs, yet they are making, using, offering to sell, selling and/or importing products which are similar or identical to Plaintiff's patented designs.

Plaintiff has submitted extensive documentation showing that Defendants are making, using, offering to sell, selling, and/or importing counterfeit products which, in the eye of the ordinary observer, are deceptively like Plaintiff's genuine products. Hazen Ex. 2. The similarities between Plaintiff's patented designs and Defendants' counterfeit products are readily discernable—their counterfeit products also consist of ornamental designs of an insulated beverage sleeve embodied as miniature jackets, life vests, flannels, sleeping bags, and parkas. Finally, Plaintiff has not licensed or authorized Defendants to use Plaintiff's patented designs, and none of the Defendants are authorized retailers of Plaintiff's genuine products. Accordingly, Plaintiff is likely to establish a *prima facie* case of design patent infringement.

### C. There is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Plaintiff's PUFFIN and FUN. TOGETHER. trademarks, copyrights, and patented designs are intimately connected. Plaintiff utilizes all forms of its protected intellectual property to build on the popularity and success of its PUFFIN and FUN. TOGETHER. brands. Defendants' unauthorized use of all of Plaintiff's intellectual property has harmed and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Hazen Decl.*,* ¶ 23-26.

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (internal citations omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Likewise, the Plaintiff will continue to suffer irreparable harm if Defendants are allowed to continue to use Plaintiff's copyrighted works to market their products. Plaintiffs in copyright infringement cases have been granted injunctive relief where a defendant's continued use would damage the Plaintiff's "reputation, goodwill, competitive position, and market share" as well as its "investment in and commitment to high standards of quality control and customer service." *Frerck v. John Wiley & Sons, Inc.*, 850 F.2d 889, 893 (N.D. Ill. 2012) (internal citation omitted).

Finally, the Defendants' use of Plaintiff's registered design patents has harmed and continues to irreparably harm the Plaintiff's goodwill, reputation, and business opportunities. *See Peng v. P'ships and Unincorporated Ass'ns Identified on Schedule A*, No. 21-cv-1344, 2021 WL 4169564, at *3 (N.D. Ill. Sep. 14, 2021) (internal citations omitted). Additionally, "any monetary judgment is likely uncollectable" because, upon information and belief, many Defendants named

in Schedule A reside in the People's Republic of China. This weighs in favor of injunctive relief. *Id*.

Defendants' unauthorized use of the Plaintiff's intellectual property has harmed and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *See* Hazen Decl., ¶¶ 23-26. The extent of the harm to Plaintiff's reputation and the associated goodwill, along with the possible diversion of customers due to loss in brand confidence, are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to the plaintiff's goodwill was irreparable harm for which the plaintiff had no adequate remedy at law). Plaintiff will suffer immediate and irreparable injury, loss, or damage if a preliminary injunction is not issued. Fed. R. Civ. P. 65(a).

### D. The Balance of Harms Tips in Plaintiff's Favor, and the Public Interest is Served by Entry of the Injunction

As noted above, if this Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits; (2) no adequate remedy at law; and, (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration, since "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc v. Reed Elsevier*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla.

13

1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of counterfeit products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores through their Seller Aliases with Plaintiff's approval and endorsement. *See* Hazen Decl., ¶ 16. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' conduct. *See id.*, ¶¶ 22-24. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ." 15 U.S.C. § 1116(a)

### A. A Preliminary Injunction Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Intellectual Property is Appropriate

Plaintiff requests a preliminary injunction requiring Defendants to immediately cease all use of the PUFFIN and FUN. TOGETHER. trademarks, or substantially similar marks, and Plaintiff's works, and Plaintiff's patented designs on or in connection with all Defendant Internet Stores and their Seller Aliases. Such relief is necessary to stop the ongoing harm to the Plaintiff's intellectual property and associated goodwill, as well as consumer harm, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Plaintiff's intellectual

property. *See* Hazen Decl., ¶ 22. Plaintiff is currently unaware of both the true identities and locations of Defendants, as well as other Seller Aliases, used to distribute counterfeit products. *Id.,* ¶¶ 17-19.

In cases addressing similar allegations of the Internet-based violation of intellectual property rights, including trademark infringement, copyright infringement, and design patent infringement, the courts in the Northern District of Illinois regularly issue preliminary injunctions following a temporary restraining order. *See, e.g., Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames, or any other keywords on his websites"); *see also Peng,* 21-cv-1344, 2021 WL 4169564 (granting preliminary injunction restraining defendants from selling or offering for sale products that infringe on plaintiff's patents and extended freeze of defendants' accounts); *see also Mercis B.V. v. P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-0872, 2021 WL 4699007 (N.D. Ill. Mar. 19, 2021) (granting preliminary injunction to extend the TRO and enjoining defendants from using plaintiff's copyrighted works).

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests continuing restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of counterfeit products is not impaired. Issuing a continuance on the restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, Defendants in this case hold most of their assets in offshore accounts which make it

easy to hide or dispose of assets. This will render an accounting by Plaintiff meaningless. *See* Hazen Decl., ¶ 20.

Courts have the inherent authority to issue a prejudgment asset restraint when the plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of success on the merits of its intellectual property claims. As such, Plaintiff is entitled, "subject to the principles of equity, to recover . . . defendants' profits." 15 U.S.C. § 1117(a)(1). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, Nos. 03 C 4844, 03 C 5311, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005), entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. This Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Since the tobacco company sought disgorgement of the storeowner's profits, an equitable remedy, this Court froze the storeowner's assets. *Id.*

Similarly, the court in *Chrome Cherry Ltd*, entered an asset restraining order in a design patent infringement case, finding that,

> [S]hould Defendants be informed of this proceeding before a temporary restraining order could issue, Defendants will likely register new e-commerce stores under new aliases and move assets to offshore bank accounts outside the jurisdiction of the Court. The Court further [found] that a temporary restraining order immediately enjoining Defendants' unauthorized and unlawful sale of products using infringing versions [of Plaintiff's] United States design patent [was] warranted [there].

16

*Chrome Cherry Ltd. v. P'ships and Unincorporated Ass'ns Identified On Schedule "A"*, No. 21-cv-5491, 2021 WL 6752296, at *2 (N.D. Ill. Oct. 20, 2021). Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their funds attained through their infringing and counterfeit activities to offshore bank accounts. Thus, an asset restraint is proper in the requested preliminary injunction during the pendency of this action.

### C.  Plaintiff is Entitled to Continued Expedited Discovery

"[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfield*, No. 06 C 6964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts have much flexibility in determining whether to grant a party's request for discovery. *Id.* (internal citations omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff has received most of the documents and information the Court ordered in the TRO in this matter. TRO, ECF No. 11. The e-commerce platforms used by Defendants have substantially complied with the subpoenas served upon them, and the identified defendants have been served with the Summons, Complaint, and TRO. However, two Defendants from these Platforms were not served because service by email was returned as undeliverable, and as such they have been excluded from Schedule A. Furthermore, Plaintiff has been unable to serve Defendants operating through Alibaba and AliExpress because the platforms have not yet provided

17

the Defendant data needed to serve them. As such, these Defendants have also been excluded from the Schedule A below. As soon as Plaintiff has successfully served these Defendants, it will move for a second Preliminary Injunction.

Plaintiff respectfully requests that expedited discovery in this matter remain in effect to further discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Plaintiff's proposed preliminary injunction is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts in order to freeze them is necessary to ensure that these activities are contained. *See, e.g., Deckers Outdoor Corporation v. P'ships, et al.*, No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished opinion). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Therefore, Plaintiff respectfully requests that expedited discovery be continued.

## V. THE EXISTING BOND SHOULD SECURE THE INJUNCTIVE RELIEF

In connection with the TRO, Plaintiff posted a bond of $10,000.00 by order of the Court. Surety Bond, ECF No. 12. Due to the strong and unequivocal evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that the bond now on deposit with the Clerk stand as security for the preliminary injunction as well.

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Plaintiff's business, its well-known PUFFIN and FUN. TOGETHER. Brands, and consumers. Without entry of the requested relief, Defendants' offering for sale and sale of counterfeit items will continue to lead prospective purchasers and others to believe that Defendants' counterfeit items have been manufactured or authorized by Plaintiff, when this is not the case. Thus, entry of a preliminary injunction is vital.

In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a preliminary injunction enjoining Defendants to immediately cease all use of the PUFFIN and FUN. TOGETHER. trademarks or substantially similar marks, Plaintiff's copyrighted works, and Plaintiff's patented designs on or in connection with all Defendant Internet Stores and their Seller Aliases.

Dated: November 22, 2022        Respectfully submitted,

/s/James E. Judge
Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Flener IP Law, LLC
77 W. Washington St., Suite 800
Chicago IL 60602
(312) 724-8874
jjudge@fleneriplaw.com